**In the United States District Court for the**
**Western District of Oklahoma**

| | | |
|---|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Isaac Nicholas Spire,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CR-25-170-JD |

## Isaac Spire's Sentencing Memorandum

Mr. Spire, through counsel, submits this Sentencing Memorandum and asks the Court to impose a downward variance sentence. With a total offense level of 28 and criminal history category I, the advisory range is 78 –97 months. (PSR ¶ 76). A downward variance is sufficient, but not greater than necessary, to serve the purposes of sentencing under 18 U.S.C. § 3553(a).

### 1. Nature and Circumstances of the Offense

On May 6, 2025, an indictment was filed in the Western District of Oklahoma charging Mr. Spire with one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(b).

In March 2024, files accessible through a BitTorrent network were traced to an internet connection associated with Mr. Spire. Those files included images and videos depicting child sexual abuse material. (PSR ¶¶ 12–13). In April 2025, a search warrant was executed at Mr. Spire's residence, and electronic devices belonging to him were seized. (PSR ¶ 22). A forensic review of those devices identified a large volume of files depicting

child sexual abuse material. Investigative materials contain no evidence of communications, attempted contact with minors, or other interactive conduct.

**2. History and Characteristics of Mr. Spire**

Mr. Spire was born in Cushing, Oklahoma and has lived there most of his life. (PSR ¶ 56). He was raised by his parents and had a relatively healthy upbringing. In 2008, he temporarily moved to Kansas to attend college. (PSR ¶ 67). He met his ex-wife there and the two were married for approximately seven years before divorcing in 2015. (PSR ¶ 57). He has two teenage children he regularly sees who currently live with his parents. (PSR ¶ 56). Mr. Spire is 40 years old and has no criminal history.

In November of 2025, Mr. Spire was formally diagnosed with Asperger's Syndrome by Dr. Peter B. Stanbro, MD. For most of his life, he struggled to connect with people, misread social situations, and didn't know how to handle emotional stress. This diagnosis provided a framework to understand these behaviors for the first time.

As a child, Mr. Spire's parents and some of his teachers suspected he was autistic, but he was never formally evaluated. (PSR ¶ 61). He struggled to develop relationships in school and was frequently isolated or bullied by his peers. At home, he often experienced a similar sense of disconnection, driven in part by his difficulty emotionally connecting with his parents.

As an adult, Mr. Spire has faced similar struggles. He has trouble making and keeping close relationships. When things get emotionally difficult, he tends to retreat inward rather than reach out to others. When he's under sustained pressure, these patterns

become harder to break and often turn into more extreme isolation and unhealthy coping mechanisms.

Pornography became Mr. Spire's primary coping mechanism. Its use appears closely correlated to periods of isolation he experienced during pivotal moments in his life. Mr. Spire's pornography addiction worsened after he moved away to attend college. He had similar struggles making friends and no family support to fall back on. Pornography provided a temporary escape from loneliness and feelings of inadequacy.

His early college years were dominated by prolonged periods of isolation, depression, and low self-esteem. He stopped regularly attending classes and started compulsively consuming pornography. He recognized his life was deteriorating and sought help his junior year. He began counseling and started taking medicine for depression. With treatment and increased social engagement, his pornography use decreased. This helped, and Mr. Spire's pornography consumption lessened as he started seeking social connections.

In 2008, Mr. Spire met his ex-wife, Kali, at Pittsburg State University. They were married six months later. Two years after their marriage, they welcomed their first child. Kali had been emotionally abusive since the beginning of the marriage, but the physical abuse did not begin until she was pregnant. What initially involved occasional slapping or punching, eventually became frequent physical assaults that sometimes included restraints or weapons. Kali told Mr. Spire this is what he deserved. He believed her.

Although the marriage formally ended in divorce in 2015, the couple had separated two years earlier following a particularly severe incident. On Thanksgiving Day in 2013,

Kali assaulted Mr. Spire for hours in front of their children. (PSR ¶ 58). She then recruited their son into the assault. The incident escalated until Kali retrieved a knife and sliced the side of Mr. Spire's face. He was able to escape the home and drive to a nearby park, where he contemplated suicide. Instead, he contacted law enforcement and voluntarily admitted himself to a psychiatric hospital, where he was treated for shock. (PSR ¶¶ 58, 61).

The Oklahoma Department of Human Services investigated the incident, and Mr. Spire was ultimately awarded primary custody of the children. In the aftermath of the assault Mr. Spire struggled with severe PTSD and panic attacks. Believing he was not emotionally stable enough to serve as primary custodian, he transferred guardianship to his parents. (PSR ¶ 56). Mr. Spire continued living with his parents and children until his arrest in the present case.

Following his divorce, Mr. Spire has made sustained efforts to address both trauma and addiction. In 2014, he began attending classes geared to help victims of domestic violence and started mental health medication[1]. (PSR ¶ 61). In 2021, Mr. Spire found God and became active in the Yale Fellowship Baptist Church. In 2025, Mr. Spire entered therapy at Grand Mental Health before transitioning to Cornerstone Counseling & Consulting. (PSR ¶¶ 61, 62). He currently attends weekly counseling and a peer-support group focused on understanding and managing his pornography addiction and remains actively involved in his church community. (PSR ¶ 63).

[1] Mr. Spire stopped taking the medication in 2022 after feeling it was no longer necessary.

The past five years have brought another prolonged period of loss and hardship. Mr. Spire was laid off from his job at Walmart around the time his uncle and grandmother's health started to decline. (PSR ¶ 70). He helped take care of his grandmother and became his uncle's primary caregiver for two years. His uncle passed away in April 2024. Two months later, his grandfather died unexpectedly from a heart attack. His grandmother passed away in February 2025.

During this period, Mr. Spire again withdrew. In 2024, he stopped attending church and returned to a familiar pattern of isolation, depression, and compulsive pornography use. Over approximately a year, he cycled repeatedly between downloading pornography, experiencing intense shame, deleting it, and then relapsing. Each cycle escalated in severity. Ultimately, he sought out and viewed child pornography. He continued compulsively in this cycle until he was arrested for the instant offense.

His recent Asperger's diagnosis does not alter his responsibility for the offense. It does, however, help explain why his maladaptive coping patterns became so entrenched. Research on autism spectrum disorders shows that individuals with ASD often develop rigid behavioral patterns and have difficulty self-regulating when those patterns are unhealthy. They also tend to struggle with emotional awareness and may not recognize when they need help until a crisis occurs.

For Mr. Spire, this meant that when stress mounted—losing his job, becoming a caregiver, experiencing multiple deaths in the family—he retreated into the same isolated pattern he'd used since college. Without external structure to interrupt the cycle, it escalated. The flip side of this rigidity is that he responds well to clear external structure.

This is evident when looking at his conduct on pretrial supervision, where he has complied fully with the restrictions and expectations placed on him. His compliance and likelihood of future compliance is a predictable response given his diagnosis.

Mr. Spire understands that his viewing of child sexual abuse material caused real harm. He does not minimize this harm and agrees that his actions warrant prison time. He's worked hard to not let the stigma associated with this conviction devolve into denial, blame-shifting, or self-destructive shame. That posture has been reflected in his successful conduct on pretrial supervision over the last seven months.

**3. The Need for the Sentence Imposed**

The Court's task under § 3553(a) is not to minimize the seriousness of the offense, but to determine what sentence is sufficient—without being greater than necessary—to achieve the goals of sentencing. Mr. Spire is 40 years old, has no criminal history, and is facing incarceration for the first time. His conduct on pretrial supervision demonstrates that clear rules, monitoring, and accountability have effectively constrained his behavior. A sentence below the advisory guidelines sufficiently addresses the need for just punishment, deterrence, and protection of the public, without being unnecessarily punitive.

Just punishment and deterrence in this case do not hinge on pushing the sentence to the top of the guideline range. Mr. Spire has already faced serious consequences. He was arrested, publicly charged, and placed under strict supervision that limited nearly every aspect of his daily life. After he's released, he'll remain under supervision for years. In a case like this, where monitoring and enforcement are already functioning as intended, incremental increases in punishment beyond a substantial custodial sentence offer little

additional deterrent value. This, along with the prison time he's facing, makes clear that this conduct comes with serious consequences.

Protecting the public also doesn't require an unnecessarily long prison sentence. The offense conduct did not involve distribution, communication with minors, or hands-on abuse. Since his arrest, supervision restrictions have effectively stopped the behavior that led to the offense. Going forward, continued supervision, monitoring, and access to counseling will provide better long-term protection than years of additional prison time.

The Court may reasonably question whether supervision can effectively prevent future escalation, given that Mr. Spire's conduct worsened over time before his arrest. Several factors distinguish his current situation from the period leading up to the offense.

First, he now has a diagnosis that explains patterns he couldn't previously understand. He's working with therapists who specialize in autism spectrum disorders and sexual behavior problems. Second, he's no longer isolated in the way he was during 2024. He's reconnected with his church community and maintains regular contact with his support group. Third, he will be subject to computer monitoring and internet restrictions for years after his release. The behavior that led to this offense cannot occur under those conditions. If he attempts to access pornography or disable monitoring software, supervision will detect it immediately and the Court can respond.

The question isn't whether he'll face stress again—he will. The question is whether the combination of treatment, support systems, and enforceable restrictions will prevent him from retreating into the same destructive pattern. His conduct since being arrested suggests the answer is yes.

A sentence below the advisory guideline range also does not create unwarranted disparity. Mr. Spire's advisory guideline range of 78-97 months accounts for the quantity and content of images. (PSR ¶ 76). But the Guidelines cannot account for the fact that this is his first offense at age 40, that he was compliant throughout pretrial supervision, or that his autism diagnosis provides both an explanation for past behavior and a roadmap for future management. A downward variance here is grounded in individualized factors recognized by § 3553(a), including his lack of criminal history, first exposure to incarceration, and demonstrated compliance under supervision. Imposing a substantial custodial sentence below the advisory range promotes proportionality and consistency by aligning punishment with Mr. Spire's specific conduct and characteristics.

Mr. Spire is forty years old with no criminal history, and he's facing the most serious consequences of his life. He's complied with every restriction, accepted accountability, and followed the rules set by the Court. He's also taken additional steps to better understand his addiction and the choices that brought him here. He'll go into custody knowing himself and the changes he needs to make to ensure this never happens again.

A sentence below the advisory guideline range, followed by years of strict supervision, accomplishes everything the law requires: it punishes him, deters others, and protects the public. It also gives him a realistic chance to rebuild his life under conditions that will prevent this from happening again. That's not leniency—it's a sentence carefully calibrated to this particular individual and this particular offense.

## CONCLUSION

For these reasons, Mr. Spire submits that a sentence below the advisory guideline range is sufficient but not greater than necessary to accomplish the purposes of 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ *Kiefer M. Rose*
Kiefer M. Rose, OBA #35214
Assistant Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee, Suite 109
Oklahoma City, Oklahoma 73102
Telephone: (405) 609-5955
Facsimile: (405) 609-5932
Kiefer_Rose@fd.org

**Certificate of Service**

I hereby certify that on December 29, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF Registrants:

Assistant United States Attorney Tiffany Edgmon

/s/ *Kiefer M. Rose*
Kiefer M. Rose